# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02618-STV

STEPHANIE MAZUR, and
JULIA WUNDER,

      Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

      Defendant.

_____

# ORDER
_____

Chief Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendant/Counterclaim Plaintiff State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment ("Defendant's Motion") [#48] and Plaintiffs' Motion for Summary Judgment on Defendant's Counterclaim for Declaratory Judgment ("Plaintiffs' Motion") [#51] (collectively, the "Motions"). The Motions are before the Court on the parties' consent to have a United States magistrate judge conduct all proceedings in this action and to order the entry of a final judgment. [##19, 22] This Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motions. For the following reasons, Defendant's Motion [#48] is **GRANTED** and Plaintiffs' Motion [#51] is **DENIED**.

## I.    FACTUAL BACKGROUND[1]

At all relevant times, Thomas and Melinda Wunder owned a 1999 Toyota Land Cruiser (the "Land Cruiser") that was insured by a policy (the "Policy") issued by Defendant State Farm Automobile Insurance Company ("State Farm").  [#45 at STIP5-7] Thomas and Melinda Wunder were the named insureds under the Policy which included underinsured motorist ("UIM") coverage.  [*Id.* at STIP8-9]  The Policy's UIM provisions provide, in relevant part:

> [State Farm] will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle.  The bodily injury must be:
>
> 1.    sustained by an insured; and
>
> 2.    caused by an accident that involves the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle.

[*Id.* at STIP10]  The Policy defines an "uninsured motor vehicle" to include:

> [A] land motor vehicle:
>
> 1.    the ownership, maintenance, and use of which is:
>
>       a.    not insured, self-insured, or bonded for bodily injury at the time of the accident.

[*Id.* at STIP10-11]

On April 13, 2021, at approximately 9:30 p.m., nonparty Richard Fralick was driving his Subaru northbound on Interstate 25 in New Mexico between New Mexico mile markers 122 and 123, with nonparty William Westuk as a passenger.  [*Id.* at STIP12]  In this area of the highway, the northbound and southbound lanes of Interstate 25 are

---

[1] The undisputed facts are drawn from the Stipulations for Summary Judgment Briefing jointly submitted by the parties.  [#45]  The Court refers to the stipulated facts as STIP#.

separated by a median that is approximately 300 feet wide. [*Id.* at STIP13] As a result of Mr. Fralick's negligence, the Subaru broke down near mile marker 123 and Mr. Fralick drove the Subaru off the highway and into an emergency crossover between the northbound and southbound lanes, approximately 300 feet from the southbound lane of Interstate 25. [*Id.* at STIP14-16]

Mr. Fralick was unable to restart the Subaru and neither he nor Mr. Westuk had cell phone coverage. [*Id.* at STIP17] Against Mr. Fralick's advice, Mr. Westuk tried to flag down passing motorists. [*Id.* at STIP18-20] After about three hours, and without Mr. Fralick's knowledge, Mr. Westuk exited the Subaru, walked across the crossover, and tried to flag down passing motorists in the southbound lanes of Interstate 25. [*Id.* at STIP20] At approximately 12:38 a.m. on April 14, 2021, Mr. Westuk made his way into the far left southbound lane of Interstate 25. [*Id.* at STIP21] At the same time, Plaintiff Stephanie Mazur was driving the Land Cruiser southbound on Interstate 25 with Plaintiff Julia Wunder riding in the passenger seat. [*Id.* at STIP22] Ms. Mazur swerved to avoid striking Mr. Westuk and lost control of the Land Cruiser, which rolled several times thereby injuring both Plaintiffs (the "Accident"). [*Id.* at STIP23, STIP28]

Following the Accident, Plaintiffs Mazur and Wunder each submitted UIM claims to State Farm under the Policy. [*Id.* at STIP28] Each alleged, among other things, that their injuries arose out of Mr. Fralick's negligent operation, maintenance, and use of the Subaru. [*Id.*] State Farm denied both claims. [*Id.* at STIP29]

Plaintiff initiated this action in Larimer County District Court on August 29, 2023, asserting three claims: (1) Breach of Contract, (2) Bad Faith Breach of an Insurance Contract, and (3) Violation of Colo. Rev. Stat. §§ 10-3-1115 and 1116. [#5] Defendant

3

has filed a Counterclaim seeking a declaratory judgment that it has no Accident-related obligations under the Policy.  [#21 at ¶¶ 37-45]  On October 9, 2023, Defendant removed the action to this Court pursuant to 28 U.S.C. § 1332.  [#1]  Defendant filed its Motion for Summary Judgment on November 1, 2024, and a response and a reply have been filed.  [##48, 56, 60]  Plaintiffs filed their Motion for Summary Judgment on November 5, 2024, and a response and a reply have been filed.  [##51, 57, 63]

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."  *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (citations omitted). When reviewing a cross-motion, the Court must "construe all inferences in favor of the party against whom the motion under consideration is made." *Pirkheim v. First Unum Life Insurance*, 229 F.3d 1008, 1010 (10th Cir. 2000) (quoting *Andersen v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir. 1996)).

The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact, which the movant may do "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim" when the movant does not bear the burden of persuasion at trial.  *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  If the moving party bears the burden of proof at trial, "the moving party must establish, as a matter of law, all essential elements

of the [claim or affirmative defense on which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict." *Rodell v. Objective Interface Sys., Inc.*, No. 14-CV-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331).  If the movant carries its initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial." *Adler*, 144 F.3d at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).  Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment must be based on more than mere speculation, conjecture, or surmise. *Bones v. Honeywell Int'l Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.  "Where the record taken as

a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289

(1968)).

III.    **ANALYSIS**

Defendant's Motion seeks summary judgment in its favor as to each of Plaintiffs'

claims and as to Defendant's counterclaim for declaratory judgment.  [#48]  Plaintiffs'

Motion seeks summary judgment in their favor on Defendant's counterclaim.   [#51]

Critical to the Motions is whether Plaintiffs' injuries were "caused by an accident that

involves the operation, maintenance, or use of an uninsured motor vehicle as a motor

vehicle."[2]  [#45 at STIP10]

Here, both parties agree that the Policy was an attempt to comply with Colorado's

Uninsured Motorist Act (the "UM Act") and therefore interpretation of the terms of the

Policy should reflect the overall legislative purpose of the UM Act.[3]  [##48 at 4; 51 at 11];

*see also State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256, 1260 (Colo. 2003)

("Since both the UM and PIP policy provisions [at issue in the case] are express attempts

to conform to statutory requirements, our interpretation of their terms should reflect the

overall legislative purpose of the UM and No Fault statutes.").  "The UM [Act] . . . requires

insurers to provide coverage against uninsured motorists for injuries 'arising out of the

ownership, maintenance or use of a motor vehicle,' unless rejected in writing by the

insured." *Kastner*, 77 P.3d at 1260 (quoting Colo. Rev. Stat. 10-4-609).  And the Colorado

---

[2] The parties do not appear to dispute that the Subaru was an uninsured motor vehicle.
[##48, 51]
[3] Both parties have argued that Colorado law applies.  [##48, 51]

Supreme Court has "described the legislative intent underlying the UM Act as the General Assembly's desire to provide compensation for injury caused by an uninsured motorist equal to that obtainable for injury caused by an insured  motorist." *Id.* (quotation omitted).

The Colorado Supreme Court has provided guidance on interpreting the term "use" as used by UIM insurance policies that conform to the UM Act.  First, a court "must determine . . . whether [the claimant] was using an insured vehicle in a manner not foreign to its inherent purpose at the time of the accident."  *Id.* at 1261 (quotation omitted). "Whatever the use, it must be one that was contemplated by the parties to the insurance contract, and must be inherent in the nature of the automobile [ ] as such." *Id.* (quotation omitted).  Second, "[i]f the use is foreseeably identifiable with the inherent purpose of a motor vehicle, the next prong of the inquiry is whether the 'use' is causally related to the claimant's injury." *Id.* at 1263.  This second prong requires the claimant to show "not only a 'but for' connection between the 'use' of the vehicle and the claimant's injury, but also an unbroken causal chain between that use and the injury."  *Id.* at 1264.  "Under this framework, the claimant must first show that except for the use of the vehicle, the accident or incident in question would never have taken place." *Id.*  "In addition, to complete and satisfy the causal analysis, the claimant must show that the 'use' of the vehicle and the injury are directly related or inextricably linked so that no independent significant act or non-use of the vehicle interrupted the 'but for' causal chain between the covered use of the vehicle and the injury."  *Id.*

With respect to the first prong, the Colorado Supreme Court has broadly interpreted the "inherent purpose" of **commercial** vehicles.[4]  *Id.* at 1262 (collecting cases).  But, it has explicitly held that "unless articulated otherwise in the policy, the only use of a non-commercial passenger vehicle that is foreseeable or conceivable at the time of contracting for insurance is use as a means of transportation" and "a passenger vehicle has no obvious inherent use apart from its purpose as a mode of transportation."  *Id.*  And since the Colorado Supreme Court's decision in *Kastner*, Colorado courts have taken a very narrow view of the first prong of the use analysis with respect to passenger vehicles. *Boyle v. Bristol W. Ins. Co.*, 480 P.3d 716, 717-18, 720 (Colo. App. 2020) (plaintiff, a passenger in a Toyota, was not using the Toyota when the Toyota's driver got into a road rage incident with the driver of a Jeep, the plaintiff got out of the Toyota, and the Jeep's driver made a U-turn and struck the plaintiff); *Roque v. Allstate Ins. Co.*, 318 P.3d 1, 2, 4 (Colo. App. 2012) (assailant was not using vehicle when he and the plaintiffs got into a verbal altercation while driving next to each other, each exited their vehicle, and the assailant pulled a golf club from his trunk and struck the plaintiffs with it).

Nonetheless, it is possible for an automobile to be used as a mode of transportation "without necessarily engaging in its locomotive function." *Farmers All. Ins. Co. v. Cutrone*, 448 F. Supp. 2d 1226, 1231 (D. Colo. 2006).  For example, in cases that predated *Kastner* and were not explicitly overruled by *Kastner*, the Colorado Court of Appeals held that: (1) a driver who exited her pickup truck to assist a stranded driver on an icy shoulder of eastbound Interstate 70 was exercising a conceivable use of that pickup truck and thus

---

[4] Most of the cases cited by Plaintiff involve commercial vehicles.  [#51 at 15-16]  As explained below, those cases have limited persuasive value.

was covered by her insurance policy when she was struck by a third vehicle, *Progressive Cas. Ins. Co. v. Farm Bureau Mut. Ins. Co., Inc.*, 53 P.3d 740, 742 (Colo. App. 2002), and (2) the driver and passengers of an insured vehicle were using that vehicle when they were leaning into the trunk of the vehicle parked on the shoulder of a highway attempting to remove a spare tire after suffering a flat tire while driving, *Gov't Emps. Ins. Co. v. MFA Mut. Ins. Co.*, 802 P.2d 1122, 1124-25 (Colo. App. 1990). In each case, the use involved—acting as a Good Samaritan to assist a stranded driver and fixing a flat tire— were conceivable and not foreign to the inherent purpose of the insured vehicle.[5] *Progressive Cas. Ins. Co.*, 53 P.3d at 742; *Gov't Emps. Ins. Co.*, 802 P.2d at 1124.

Applied here, the Court cannot conclude that Mr. Westuk's actions were a use of the Land Cruiser contemplated by the parties to the Policy. *Kastner*, 77 P.3d at 1261. Had Mr. Westuk been exiting his vehicle in order to seek help and then been struck by another vehicle heading northbound on Interstate 25, the Court would have no problem concluding that his injury was contemplated by the parties to the Policy, and therefore the first prong of the use analysis was satisfied. But this is not what happened. The vehicle had been driven to an area of safety in the emergency crossover between the northbound and southbound lanes. [#45 at STIP15] Mr. Westuk then left this area of safety, in the middle of the night, to try to flag down assistance from southbound motorists traveling at

---

[5] The Court can conceive of other examples where injuries occur from the use of a vehicle that is no longer being operated. Assume, for example, that a driver parks her vehicle in a parallel parking spot in the Cherry Creek shopping district in Denver. As she exits the vehicle, the driver negligently opens her door without paying attention, thereby injuring a bicyclist who was passing by at that exact moment. The Court would have no difficulty concluding that the injury to the bicyclist was the result of the driver's use of the vehicle, despite the vehicle being parked with the engine off, because the bicyclist's injury was conceivable to the driver's operation of the vehicle.

the high rates of speed inherent to traveling on an Interstate, and was struck while either standing or sitting (perhaps having fallen down) in the southbound lane of travel.  [*Id.* at STIP20-21]  Such actions are simply not contemplated by the parties to the Policy but are, instead, foreign to the inherent purpose of the Land Cruiser.[6]  Accordingly, Plaintiffs' claims fail the first prong of the use test.[7]  *Kastner*, 77 P.3d at 1261.

The facts of this case are undoubtedly tragic.  But the Court, sitting in diversity, must apply Colorado law.  And as explained herein, pursuant to that law, Mr. Westuk's

---

[6] In addressing this first prong, Colorado courts have routinely looked to the use of the vehicle at the specific time of the incident or accident.  *Kastner*, 77 P.3d at 1265-66 (looking at whether the vehicle was used as a vehicle at the time of the sexual assault); *Boyle*, 480 P.3d at 720 (looking at whether the vehicle was used as a vehicle at the time the individual had exited the vehicle to engage in a road rage dispute); *Roque*, 318 P.3d at 4 (same).  And this Court, sitting in diversity, is required to apply Colorado law.  The problem with this approach, however, is that it arguably collapses the two prongs into one—the Court cannot imagine a situation where the vehicle was being used as a vehicle's intended purpose at the exact time of the incident giving rise to the injury, but yet a significant act of non-use interrupted the chain (thereby failing the second prong).  Nonetheless, to the extent the Court were to broaden the scope of the first prong in this case—for example, to state that the vehicle was being used as a vehicle because it was broken down on the Interstate and such break downs are anticipated—Plaintiffs' claims would fail the second prong of the use test.  Mr. Westuk's significant independent actions of leaving his vehicle and walking into the southbound lane of Interstate 25 interrupted the causal chain between the covered use of the vehicle and the injury.

[7] Plaintiff briefly argues that Defendant "arguably waived any defenses to coverage, other than the first denial."  [#56 at 9]  But the Colorado Supreme Court has made clear that an insurer's "waiver cannot have created liability where none existed under the policy." *Empire Cas. Co. v. St. Paul Fire and Marine Ins. Co.*, 764 P.2d 1191, 1198 (Colo. 1988); *see also Gallegos v. Safeco Ins. Co. of Am.*, 646 F. App'x 689, 694 (10th Cir. 2016) ("[W]hile an insurer may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, the coverage, or restrictions on coverage, cannot be extended by the doctrine of waiver or estoppel." (quoting *Hartford Live Stock Ins. Co. v. Phillips*, 372 P.2d 740, 742 (Colo. 1962)).  As demonstrated above, there was no liability under the Policy and thus State Farm cannot waive into a coverage that did not exist.  As a result, "[t]o the extent [Plaintiffs' response] briefing could be treated as asserting [their] breach of contract claim against State Farm must be measured against the reasons stated by State Farm at the time it denied [their] request for UIM coverage, such argument is foreclosed" by Colorado precedent.  *Giertz v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 3728197, at *3 n.9 (10th Cir. May 26, 2023).

actions were not a contemplated use of the Land Cruiser, and Plaintiff's UIM claim therefore fails. Accordingly, the Court GRANTS Defendant's Motion and DENIES Plaintiffs' Motion.

## IV.    CONCLUSION

For the foregoing reasons, Defendant/Counterclaim Plaintiff State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment [#48] is **GRANTED** and Plaintiffs' Motion for Summary Judgment on Defendant's Counterclaim for Declaratory Judgment [#51] is **DENIED**. The Clerk of Court shall enter Judgement in favor of Defendant and against Plaintiffs on Plaintiffs' claims and Defendant's counterclaims.

DATED:  March 4, 2025                    BY THE COURT:

                                         s/Scott T. Varholak
                                         Chief United States Magistrate Judge